UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 14-80284-CIV-MIDDLEBROOKS/BRANNON

BLAIRE STANLEY,

    Plaintiff,

vs.

KANSAS COUNSELORS OF KANSAS
CITY, AND UNKNOWN OTHERS,

    Defendants.
_____/

## ORDER ON MOTION FOR SUMMARY JUDGMENT

THIS CAUSE comes before the Court upon Motion for Summary Judgment [DE 32] ("Motion"), filed by Defendant Kansas Counselors of Kansas City ("Defendant") on August 4, 2014. Plaintiff Blaire Stanley ("Plaintiff"), proceeding *pro se*, filed a Response [DE 34] to the Motion on August 21, 2014, to which Defendant filed a Reply [DE 37] on September 4, 2014. Plaintiff then filed an untimely Motion for Partial Summary Judgment [DE 40] on September 8, 2014[1]. In response, Defendant filed a Motion to Strike Plaintiff's Motion for Partial Summary Judgment [DE 43] on September 25, 2014. The Court has reviewed the Motions, Responses, Replies, and record in this case, and is otherwise fully advised in the premises.

**I.**   **Background**

Defendant Kansas Counselors is a debt collection agency, subject to the Fair Debt Collection Practices Act ("FDCPA"), that attempts to collect money on behalf of creditors who refer accounts (*i.e.*, alleged debts) to Defendant for collection. Two of Defendant's clients

---

[1] Pursuant to the Court's Pretrial Scheduling Order, the deadline for filing dispositive motions was August 4, 2014. [DE 14].

1

during the time period preceding this lawsuit were Physicians Reference Lab and St. Joseph Medical Center.

On or about June 8, 2011, St. Joseph Medical Center referred Plaintiff's account to Defendant for the collection of $513.03, which Plaintiff incurred from medical services performed on November 4, 2010. [DE 32-1, Comp. Ex 1 at ¶ 8]. Defendant allegedly sent Plaintiff a letter on June 8, 2011, which stated that Plaintiff owed $513.03 to St. Joseph Medical Center. It further stated:

> THE ABOVE ACCOUNT BAS BEEN REFERRED TO THIS OFFICE FOR COLLECTION. Your balance due is shown above.
> WE EXPECT PAYMENT IN FULL WITHIN -30- DAYS OF RECEIPT OF THIS LETTER. Your cooperation will defer further collection efforts.
>
> Unless you notify this office within 30 days after receiving this notice, that you dispute the validity of this debt, or any portion thereof, this office will assume this debt is valid. If you notify this office in writing, within 30 days from receiving this notice, that you dispute the validity of this debt or any portion thereof, this office will obtain verification of the debt, or obtain a copy of a judgment if you have one and mail you a copy of such judgment or verification. If you request this office, in writing within 30 days after receiving this notice, this office will provide you with the name and address of the original creditor, if different from the current creditor. Our address is: Kansas Counselors, Inc. P.O. Box 14765 Shawnee Mission, Ks. 66285 This communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose. Kansas Counselors charges a $25.00 returned check fee, or the maximum allowable by state law.

[DE 32-1, Ex. B].

On July 11, 2011, Physicians Reference Lab referred Plaintiff's account to Defendant for the collection of $90.98 for medical services received on November 12, 2010. [DE 32-1, Comp. Ex. 1 at ¶ 8]. On July 11, 2011, Defendant allegedly sent Plaintiff a similar letter. [DE 32-1, Ex. A]. Finally, on September 21, 2011, St. Joseph Medical Center referred another debt to Defendant in the amount of $854.75 for medical services Plaintiff received on October 28, 2010.

[DE 32-1, Comp. Ex. 1 at ¶ 8]. Defendant allegedly sent Plaintiff another initial notice letter on September 21, 2011. [DE 32-1, Ex. C].

Plaintiff denies having received any of the three letters Defendant claims to have sent her. Instead, Plaintiff claims to have discovered the three uncollected debts through an Online Personal Credit Report from Experian in December 2013. [DE 40, Ex. 2]. On or about December 23, 2013, Plaintiff wrote Defendant, disputing the debt and asking for verification of the amount due. [DE 34 at 6; DE 40, Ex. A].

Plaintiff initiated this action by filing her Complaint [DE 1] on February 25, 2014, which she amended on March, 6 2014. [DE 5]. According to the Amended Complaint, this matter arises from Defendant's unspecified repeated harassment of "Plaintiff in attempts to collect alleged, but non-existent debt." [DE 5 at 2]. Plaintiff further contends that Defendant reported "derogatory information" to "major credit bureaus," which she claims resulted in her being "denied credit for a re-modification of an auto loan on [November 21, 2013] with First Choice Credit Union." *Id.* at 4.

The Amended Complaint alleges Defendant violated the Fair Debt Collection Practices Act ("FDCPA") (Count I), the Florida Consumer Collection Practices Act ("FCCPA") (Count II), the Fair Credit Reporting Act ("FCRA") (Count III), and the Federal Debt Collection Procedure and Freedom of Information Act (Count IV).

On March 31, 2014, Defendant filed its answer and affirmative defenses. [DE 12]. Defendant now moves for summary judgment. [DE 32].

II.     **Legal Standard**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(a). The movant "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)(1)(A)). Where the non-moving party bears the burden of proof on an issue at trial, the movant may simply "[point] out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

After the movant has met its burden under Rule 56(c), the burden shifts to the non-moving party to establish that there is a genuine issue of material fact. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). Although all reasonable inferences are to be drawn in favor of the non-moving party, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986), he "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The non-moving party may not rest upon the mere allegations or denials of the adverse party's pleadings, but instead must come forward with "specific facts showing that there is a *genuine issue for trial*." *Id.* at 587 (citing Fed. R. Civ. P. 56(e)). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990). If the non-moving party fails to make a sufficient showing on an essential element of his case on which he has the burden of proof, the moving party is entitled to a judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323.

**III. <u>Discussion</u>**

A. Count I: Violation of the Fair Debt Collection Practices Act

The Fair Debt Collection Practices Act ("FDCPA") prohibits debt collectors from making false or misleading representations and from engaging in various abusive and unfair practices. The FDCPA says, for example, that a debt collector may not use violence, obscenity, or repeated annoying phone calls, 15 U.S.C. § 1692d; may not falsely represent "the character, amount, or legal status of any debt," § 1692e(2)(A); and may not use various "unfair or unconscionable means to collect or attempt to collect" a consumer debt, § 1692f. Its purpose is to "eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e). To prevail on an FDCPA claim, a plaintiff must prove that: "(1) the plaintiff has been the object of collection activity arising from consumer debt, (2) the defendant is a debt collector as defined by the FDCPA, and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1360-61 (S.D. Fla. 2000). In evaluating whether a debt collector's communication violates § 1692 of the FDCPA, this Circuit has adopted the "least-sophisticated consumer" standard, which is consistent with basic consumer-protection principles. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1194 (11th Cir. 2010).

Plaintiff alleges Defendant has violated the following sections of the FDCPA: §§ 1692e[2], 1692e(2), 1692e(5), 1692e(11), and 1692f(1). [DE 5]. In addition, although Plaintiff does not

---

[2] Although the Amended Complaint alleges a violation of § 1692e, Plaintiff focuses solely upon § 1692e(2), § 1692e(5), and § 1692e(11) in her various filings. Therefore, the Court will only address those subsections.

5

allege a violation of § 1692g in her Amended Complaint, she appears to assert such a violation later in various filings.

    a. §§ 1692e(2), 1692e(5), and 1692f(1)

15 U.S.C. §1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt," including "[t]he false representation of the character, amount, or legal status of any debt," and "the threat to take any action that cannot legally be taken," under subsections (2) and (5), respectively. 15 U.S.C. §§ 1692e(2), 1692e(5). Section 1692f(1) prohibits debt collectors from collecting any amount that is not "permitted by law." 15 U.S.C. § 1692f(1).

Plaintiff appears to allege that Defendant violated these sections by falsely representing the amount of debt Plaintiff owes in attempting to collect those false amounts. Plaintiff claims she does not owe any of the debts Defendant seeks to collect. Further, Plaintiff claims that Defendant unlawfully reported "inaccurate and derogatory information" regarding Plaintiff's alleged delinquent debt to credit reporting agencies, which resulted in the denial of Plaintiff's loan application[3].

Defendant denies that Plaintiff's debts are false and cites to evidence in the record to support the debts. First, Defendant's Director of Compliance, Steve Tomac, states in his Declaration that Defendant received statements verifying the services rendered for the three accounts from the medical provider creditors, Physicians Reference Lab and St. Joseph Medical Center, on January 22 or 23, 2014, and that Defendant has never been notified by either medical

---

[3] To the extent Plaintiff attempts to allege a FDCPA violation through Defendant's alleged reporting activities, her claim necessarily fails. A debt collector's reporting of information to a credit reporting agency falls outside the scope of "collection" activities, within the meaning of § 1692. *See, e.g., Heintz v. Jenkins*, 514 U.S. 291, 294 (1995) ("To collect a debt or claim is to obtain payment or liquidation of it, either by personal solicitation or legal proceedings").

6

provider that the debts have been paid or extinguished. [DE 32-1 at ¶ 14, 18]. Defendant has also provided copies of the three account statements to verify the debts. *See* [DE 32-1 Ex. A, Ex. B, Ex. C].

In response, Plaintiff cites to a statement from Physicians Reference Lab regarding $90.98 Plaintiff allegedly owes it, and highlights that the number listed under "Amount Due" is "$0.00." *See* Defendant's Exhibit D [DE 32, Comp. Ex. 1 at 17]. In reply, Defendant explains that "there is no evidence that Defendant was advised that the creditor Physicians Reference Lab contended [that the $90.98 was not due]. Rather, the account statement shows that two residual amounts for two services of $45.49 each were written off to collections [referring to Defendant] for account 2117975. That totals $90.98 and that is what Defendant sought to collect." [DE 37 at 4].

Even assuming Plaintiff is not liable for the $90.98 debt, the Supreme Court has held that "[a] debt collector is not liable in any action brought under the FDCPA . . . if it 'shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.'" *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 573 (2010) (quoting § 1692k(c)). Further, the Eleventh Circuit does not require debt collectors to independently investigate and verify the validity of a debt to qualify for a bona fide error defense. *See, e.g., Owen v. I.C. Sys., Inc.*, 629 F.3d 1263, 1276 (11th Cir. 2011) ("we also recognize that debt collectors operate under time and resource constraints. . . . [and] agree . . . that the FDCPA does not require debt collectors to independently investigate and verify the validity of a debt to qualify for the bona fide error defense).

Defendant argues that, to the extent the debts were invalid, any violation of the FDCPA was unintentional. In support, Defendant cites to Steve Tomac's detailed account of Defendant's procedures in his Declaration. [*See* DE 32-1, Comp. Ex. 1 at 2-5]. For example, Mr. Tomac avers Defendant has no records indicating that its three initial letters to Plaintiff were returned as undeliverable or that Plaintiff disputed any of the three account obligations between June 2011 and December 2013. [DE 32-1, Comp. Ex. 1 at ¶ 10-11]. According to Mr. Tomac, Defendant received Plaintiff's letter, dated December 23, 2013, disputing the debt and requesting verification of information regarding the three accounts, on December 30, 2013. [DE 32-1, Comp. Ex. 1 at 3]. Defendant internally marked the accounts as disputed on or about January 2, 2014, and requested statements for the services rendered for the three accounts from the medical provider creditors, which Defendant received on or about January 22 or 23, 2014. *Id.* at 3-4. Defendant subsequently processed and mailed the statements to Plaintiff in early February 2014 via certified mail, and postal records reveal Plaintiff received them on February 12, 2014. *Id.* at 4. Finally, Mr. Tomac asserts that Defendant has no records of notification from any consumer reporting agency that Plaintiff ever disputed the three accounts with them, and has not been notified by either Physicians Reference Lab or St. Joseph Medical Center that the three obligations at issue have been paid or extinguished. *Id.*

Thus, Defendant's procedures appear reasonably adapted to avoid readily discoverable errors. Plaintiff has not identified any evidence in the record to support a finding that Defendant's error, if any, was intentional, or that Defendant's procedures were not reasonably adapted to avoid readily discoverable errors.

Defendant also cites to the above-listed evidence in support of its position that it did not violate §1692f(1), which prohibits debt collectors from collecting a debt that is not permitted by

8

law, and that it never threatened to take illegal action as prohibited by § 1692e(5). In response, Plaintiff fails to provide any evidentiary support to the contrary. Accordingly, Defendant is entitled to judgment as a matter of law as to Plaintiff's claims under §§ 1692e(2), 1692e(5), and 1692f(1).

b. §1692e(11)

Section 1692e(11) requires debt collectors to disclose in the initial written communication to the consumer that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose. 15 U.S.C. § 1692e(11); *Edwards v. Niagara Credit Solutions, Inc.*, 584 F.3d 1350, 1353 (11th Cir. 2009). It further requires debt collectors to disclose in subsequent communications that the communication is from a debt collector. *Id.*

Plaintiff alleges Defendant's February 6, 2014 letter violated § 1692e(11) by failing to "fully contain the mini-miranda"[4] [DE 34 at 12], but does not specify which, if any, of the above required elements is missing[5]. It is undisputed that the 2014 letter, which Plaintiff attaches as Exhibit D, clearly states, "[t]his communication is from a debt collector," as is required for subsequent communications under § 1692e(11). [DE 40, Ex. D].

To the extent Plaintiff argues that Defendant never *sent* the three initial notice letters in 2011, and that, therefore, Defendant's February 6, 2014 letter constitutes the initial

---

[4] Plaintiff also seems to assert that § 1692e(11) was violated by an insurance adjuster from Travelers Insurance [DE 5 at ¶ 14]. However, Travelers Insurance is not a Defendant.

[5] Plaintiff does not allege Defendant's 2011 initial notice letters violated § 1692e(11). Even if she did, those letters contain a statement that "[t]his communication is from a debt collector and is an attempt to collect a debt. Any information obtained will be used for that purpose," [DE 32-1 Comp. Ex. 1, Exs. A-C], in compliance with § 1692e(11). Futher, Section 1692k(d) provides that actions to enforce liability created by the FDCPA must be brought "within one year from the date on which the violation occurs." 15 U.S.C. § 1692k(d). The Eleventh Circuit holds that this one-year limitations period begins the day after a debt collector mails the initial collection letter, as it is "the debt collector's last chance to comply with the FDCPA." *Maloy v. Phillips*, 64 F.3d 607 (11th Cir. 1995).

communication, that argument is rejected. Defendant alleges it sent Plaintiff three initial letters notifying Plaintiff of her debt obligations between June 8, 2011 and September 21, 2011. In his Declaration, Defendant's Director of Compliance avers that the 2011 letters were and further avers that Defendant has no records indicating that the letters were returned as undeliverable. [DE 32-1, Comp. Ex. 1 at 2-3]. Defendant also provides copies of the three 2011 letters. *See* [DE 32-1, Comp. Ex. 1 at Exs. A-C.].

In response, Plaintiff avers in her Affidavit that "Defendant never *sent* any initial notice" (emphasis added) on June 8, 2011, July 11, 2011, or September 21, 2011 [DE 34 at 3-4], but fails to provide any factual explanation as to the basis of her knowledge. In fact, Plaintiff's own evidence, namely the Credit Report from Experian, undermines Plaintiff's assertion that Defendant never sent the 2011 letters. That report, dated December 18, 2013 (before Plaintiff contacted Defendant), contains information from Defendant that it sought "collection" of "$513" in "06/2011," "$90" in "07/2011," and "$854" in "09/2011" [DE 40, Ex. 2], which is consistent with Defendant's record evidence supporting that it sent three initial notice letters in compliance with § 1692e(11) in June, July, and September of 2011.

The Eleventh Circuit has found that where a Plaintiff asserts no factual basis for knowledge asserted in a self-serving affidavit, and that knowledge is contrary to all other record evidence, she fails to present sufficient evidence to overcome summary judgment. *See Watkins v. Regions Mortgage Inc.*, 555 F. App'x 922, 926 (11th Cir. 2014) (finding Plaintiff's contentions "not supported by any evidence in the record" where Plaintiff's "contentions that several documents were graphically altered are supported only by her self-serving affidavit" on appeal of summary judgment); *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1150 (11th Cir. 2005); *Hall v. Burger King Corp.*, 912 F. Supp. 1509, 1537 (S.D. Fla.

1995) ("conclusory, self-serving affidavits will not suffice to defeat an otherwise well-supported motion for summary judgment").

To the extent Plaintiff avers she never *received* any of Defendant's 2011 letters, and therefore the 2011 letters do not constitute the initial communication, that argument is also rejected as receipt is immaterial. "The FDCPA defines 'communication' very broadly as 'the conveying of information regarding a debt directly or *indirectly* to any person through any medium.'" *Romea v. Heiberger & Associates*, 163 F.3d 111, 114 (2d Cir. 1998) (quoting 15 U.S.C. § 1692(a)(2)) (emphasis added). Nowhere does the statute indicate that receipt of initial communications is required. While this Circuit has not addressed the issue directly, other Circuits interpreting other subsections of § 1692 have held that receipt is not required. *See, e.g.*, *Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197 (9th Cir. 1999) (finding debtors' bare assertion they did not receive debt validation notice as required under § 1692g(b) not sufficient to raise genuine dispute of fact as to whether debt collector sent notice to debtors as required by FDCPA, where debt collector's standard business practice established notice sent to debtors' home via first class mail, and debtors offered no evidence debt collector failed to follow its ordinary business procedure in sending them the notice) (citing 15 U.S.C. § 1692g(a)).

Further, had Congress intended that debt collectors include language that they are attempting to collect a debt and that any information obtained will be used for that purpose in all initial *and* subsequent communications, in case the first communication was not received by the consumer, Congress would not have amended the statute in 1996. Unlike the prior version of § 1692e(11), which applied to "all communications," Congress amended subsection (11) to differentiate between "initial" and "subsequent" communications, limiting the disclosure required in subsequent communications. 15 U.S.C. § 1692e(11); *Cf. Tolentino v. Friedman*, 46

F.3d 645, 650-51 (7th Cir. 1995) (noting that by requiring disclosure in all communications under prior version of § 1692e(11), Congress ensured that even if first letter not received by consumer, subsequent notices will nonetheless provide consumer with requisite disclosure). Where, as here "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Bates v. United States*, 522 U.S. 23, 29 (1997) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).

c. <u>1692g(b)</u>

Although Plaintiff does not allege a violation of § 1692g(b) in her Amended Complaint, she appears to assert such a violation in her later filings. Section 1692g(b) states that if a consumer notifies a debt collector in writing within 30 days of the initial communication from the debt collector that the debt is disputed, the debt collector must cease all collection activities until it "obtains verification of the debt or a copy of a judgment" and mails it to the consumer. 15 U.S.C. § 1692g(b).

Mr. Tomac avers that Plaintiff did not contact Defendant within 30 days of the 2011 letters, but rather, contacted Defendant in December 2013. [DE 32-1, Comp. Ex. 1 at 3]. A debt collector has no obligation to cease collection activities until it provides debt verification if the consumer does not make the request within 30 days of the initial communication from the debt collector. *See, e.g., Shimek v. Weissman, Nowack, Curry & Wilco, P.C.*, 374 F.3d 1011 (11th Cir. 2004).

In response, Plaintiff argues that she never received the initial letters, and therefore, her own December 23, 2013 letter constitutes the initial correspondence, making Defendant's verification of the debt on February 6, 2014 untimely. However, "[t]he plain language of §

1692g(b) requires only that a debt collector *cease collection* of the debt if it is disputed." *Hepsen v. Resurgent Capital Servs., LP*, 383 F. App'x 877, 881 (11th Cir. 2010). There is no requirement that a debt collector send verification in the absence of further collection activities. *See, e.g., Warren v. Countrywide Home Loans, Inc.*, 342 F. App'x 458, 460 (11th Cir. 2009). Plaintiff does not allege, and there is no evidence to suggest, that Defendant initiated any further collection activities after receiving Plaintiff's December 23, 2013 letter. Therefore, Defendant is also entitled to judgment as a matter of law as to any claim under § 1692g(b).

B. <u>Count II: Violation of the Florida Consumer Collection Practices Act</u>

Plaintiff also alleges Defendant violated Fla. Stat. §§ 559.72(6) and 559.72(9) of the Florida Consumer Collection Practices Act ("FCCPA"). [DE 5 at 5]. Section 559.72(9) prohibits a debt collector from attempting or threatening to enforce a debt it knows is not legitimate or asserting some other legal right it knows does not exist. Fla. Stat. § 559.72(9).

The Court begins by noting that Fla. Stat. § 559.72(9) (FCCPA) closely parallels 15 U.S.C. § 1692e (FDCPA). For example, both 15 U.S.C. § 1692e(5) and Fla. Stat. § 559.72(9) prohibit a debt collector from threatening action that cannot legally be taken. In contrast to the FDCPA, the FCCPA requires a plaintiff to demonstrate that a debt collector possesses *actual knowledge* that a debt is not legitimate or that the threatened means of enforcing the debt is unavailable, thereby imposing a higher burden upon plaintiffs than its federal counterpart. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 (11th Cir. 2010). Further, a "demand for payment upon a legitimate debt will not support a claim under section 559.72(9)." *Bentley v. Bank of Am., N.A.*, 773 F. Supp. 2d 1367, 1373 (S.D. Fla. 2011) (citing *Locke v. Wells Fargo Home Mortgage*, No. 10-60286, 2010 WL 4941456, at *3 (S.D. Fla. Nov. 30, 2010), which held

nothing in FCCPA prevented Wells Fargo from attempting to collect on outstanding amounts owed by plaintiff for mortgage loan).

Plaintiff does not allege any facts or present any evidence to support her claim under § 559.72(9). Moreover, the Court has already established that Plaintiff's claim fails under § 1692e(5) of the FDCPA. Given that the FCCPA specifies that in construing its provisions, "due consideration and great weight shall be given to the interpretations of . . . the federal courts relating to the federal Fair Debt Collection Practices Act," that analysis need not be repeated here. *Oppenheim v. I.C. Sys., Inc.*, 627 F.3d 833, 839 (11th Cir. 2010) (citing Fla. Stat. § 559.77(5)). Thus, Plaintiff's claim under Fla. Stat. § 559.72(9) fails as a matter of law.

Plaintiff also alleges a violation of Fla. Stat. § 559.72(6) based on Defendant's reporting of the alleged debt to Equifax and Experian [DE 34 at 9]. Section 559.72(6) prohibits a debt collector from disclosing information regarding a debt known to be reasonably disputed by a debtor without disclosing that fact. Fla. Stat. § 559.72(6). If disclosure is made before a reasonable dispute has been asserted, the debt collector must provide, within 30 days of the debtor's request, the details of the dispute to those who received the disclosures within the preceding 90 days. *Id.*

Defendant argues that, to the extent that Plaintiff's FCCPA claim is based upon Defendant's alleged reporting activities, it is preempted by § 1681t(b)(1)(F) of the Fair Credit Reporting Act ("FCRA"). The Court agrees. As Defendant notes, "The liability of furnishers of information to credit bureaus has been expressly delineated under the FCRA at 15 U.S.C. § 1681s-2." [DE 32 at 11].

Although the Eleventh Circuit has not considered the issue, courts within the Eleventh Circuit have consistently held that a claim brought under the FCCPA is preempted by the FCRA

14

"to the extent that the FCCPA claim is premised on credit reporting activity." *See e.g. Lopez v. Chase Bank USA, N.A.*, No. 8:13-CV-1895-T-17, 2014 WL 690282 at *3 (M.D. Fla. Feb. 20, 2014); *Lett v Midland Funding LLC*, No. 2:13CV665, 2013 WL 6162674 (M.D. Ala. Nov. 22, 2013); *Horton v HSBC Bank*, No. 1:11-CV-3210, 2013 WL 2452273 at *13, *15 (N.D. Ga. June 5, 2013); *Osborne v. Vericrest Fin., Inc.*, 8:11-CV-716-T-30, 2011 WL 1878227 at *3 (M.D. Fla. May 17, 2011); *Menashi v. Am. Home Mortg. Servicing, Inc.*, No. 8:11-CV-1346-T-23, 2011 WL 4599816 at *2 (M.D. Fla. Oct. 4, 2011); *Lofton-Taylor v. Verizon Wireless*, No. 05-0532, 2006 WL 3333759 (S.D. Ala. Nov. 14, 2006). Therefore, the Court analyzes Plaintiff's § 559.72(6) allegations under Plaintiff's FCRA claim.

C. <u>Count III: Violation of the Fair Credit Reporting Act ("FCRA")</u>

The Amended Complaint alleges that Defendant violated § 1681b(f) of the Fair Credit Reporting Act (FCRA), which provides:

> Certain use or obtaining of information prohibited. A person shall not use or obtain a consumer report for any purpose unless—
> (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and
> (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification.

15 U.S.C. § 1681b(f).

Plaintiff does not allege that Defendant obtained Plaintiff's consumer report. Further, there is no evidence in the record to suggest that Defendant ever obtained Plaintiff's credit report, much less in violation of § 1681b(f).

However, Plaintiff does allege that Defendant was a "furnisher of information within the meaning of the FCRA, 15 U.S.C. § 1681s-2." [DE 5 at ¶ 27]. Plaintiff also alleges Defendant reported derogatory and inaccurate information to one or more credit reporting agencies, which

resulted in her being denied a loan to refinance her car. [DE 5 at ¶ 15; DE 34 at 11; DE 34, Ex. 2].

Under 15 U.S.C. § 1681s-2(a), a person may not knowingly furnish inaccurate information to a consumer reporting agency, must correct any such furnished information, and must notify a consumer reporting agency when any such information is disputed by a consumer. § 1681s–2(a)(1)-(3). Congress expressly reserved enforcement of subsection (a) to government agencies and officials, thereby limiting a consumer's private cause of action against a furnisher of credit information to § 1681s-2(b), which requires furnishers of consumer credit information to verify the sufficiency and accuracy of the information *when notified by a consumer reporting agency* of a credit report dispute. *Peart v. Shippie*, 345 F. App'x 384, 386 (11th Cir. 2009). Section 1681s–2(b) "of the FCRA can be enforced through a [consumer's] private right of action [against a furnisher of credit information], but only if the furnisher received notice of the consumer's dispute from a consumer reporting agency." *Peart*, 345 F. App'x at 386 (citing 15 U.S.C. § 1681s–2(b)(1)).

As Defendant notes, however, Plaintiff does not allege that she ever disputed her credit report with a consumer reporting agency, much less that Defendant received notice of such a dispute. There is also no evidence that Defendant failed to investigate the accuracy of Plaintiff's alleged debt obligations after being notified of a dispute by Plaintiff. Moreover, Plaintiff's denial of credit in November 2013 arose before Plaintiff ever disputed the alleged debts with Defendant in December 2013. Accordingly, Defendant is entitled to judgment as a matter of law as to Plaintiff's FCRA claims.

D. <u>Count IV: Violation of the Federal Debt Collection Procedure (28 U.S.C. §§ 3001-3308) and the Freedom of Information Act (5 U.S.C. § 552)</u>

Finally, the Amended Complaint alleges that Defendant violated the Federal Debt Collection Procedure (28 U.S.C. §§ 3001-3308) and the Freedom of Information Act (5 U.S.C. § 552), but provides no factual assertions or evidence in support of those claims.

As for her Federal Debt Collection Procedure (28 U.S.C. §§ 3001-3308) claim, Plaintiff does not allege that Defendant is the United States, a federal corporation, or an agency, department, commission, board, or other entity or instrumentality of the United States, as defined in 28 U.S.C. § 3002(15). Therefore, any claim under 28 U.S.C. §§ 3001-3308 necessarily fails. *See* 28 U.S.C. §3001(a) (chapter "provides the exclusive civil procedures for the United States (1) to recover a judgment on a debt; or (2) to obtain, before judgment on a claim for a debt, a remedy in connection with such a claim.").

Similarly, the Freedom of Information Act (5 U.S.C. § 552) only applies to agencies of the United States government, and it is uncontested that Defendant is not an agency of the United States. Accordingly, Plaintiff's claims in Count IV of the Amended Complaint also fail.

## V. Conclusion

For the foregoing reasons, the Court finds that, viewing the facts most favorably to Plaintiff and with all justifiable inferences drawn in her favor, no reasonable jury could find for Plaintiff on any of her claims. Accordingly, Defendant is entitled to summary judgment on all Counts. For the same reasons, Plaintiff's Motion for Partial Summary Judgment [DE 39] is denied.

Accordingly, it is hereby

**ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion for Summary Judgment [DE 32] is **GRANTED**;

2. Plaintiff's Motion for Partial Summary Judgment [DE 39] is **DENIED**;

3. All other pending motions are **DENIED AS MOOT**;

4. The Clerk of Court shall **CLOSE** the case.

**SO ORDERED** in Chambers at West Palm Beach, Florida, this __1__ day of October, 2014.

_____
DONALD M. MIDDLEBROOKS
UNITED STATES DISTRICT JUDGE

Copies to:   Counsel of Record